```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
MICHEL TOLIVER,                         :  10 Civ. 3165 (PAC) (JCF)
                    Plaintiff,          :
                                        :
    - against -                         :
                                        :
THE CITY OF NEW YORK, THE STATE OF      :       REPORT AND
NEW YORK, THE NEW YORK CITY POLICE      :    RECOMMENDATION
DEPT. HDQ, S.O.M.U. NEW YORK CITY       :
POLICE DEPT., DIVISION OF CRIMINAL      :
JUSTICE SERVICES, D.C.J.S. MANAGER      :
PAMELA GAITOR, D.C.J.S. DIRECTOR        :
DONNA CALL, COMMISSIONER OF             :
N.Y.P.D., SOMU DETECTIVES OLMO,         :
SANCHEZ, NEWKIRK, PERRI,                :
FOUNTOULAKIS, SERGEANT JAMES            :
DONOHUE, WENDY SANTIAGO, SERGEANT       :
HERZBERG, NEW YORK STATE DIVISION       :
OF PAROLE, POLICE OFFICER ELLEN         :
SEELIGER Shield #8931, 20th             :
PRECINCT N.Y.P.D., DETECTIVE JIMMY      :
ANGOTTA, SOMU OFFICE NEW YORK CITY,     :
                                        :
                    Defendants.         :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:
```

Michel Toliver brings this action pro se pursuant to 42 U.S.C. § 1983. The only cause of action remaining is a false arrest claim against Detectives Jose Olmo and Detective Carlos Sanchez of the New York City Police Department ("NYPD") Sex Offender Monitoring Unit ("SOMU").[1]

Mr. Toliver alleges that on March 18, 2009, he was subject to

---

[1] All claims against all other defendants were dismissed pursuant to an order of the Honorable Paul A. Crotty, U.S.D.J., dated October 18, 2011.

1

a false arrest resulting from his alleged failure to register as a sex offender in violation of the Sex Offender Registration Act, N.Y. Corr. Law § 168 et seq. ("SORA"). The defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that the motion be granted.

Background

On April 26, 1989, Mr. Toliver was convicted of Sexual Abuse in the First Degree, as a consequence of which he was obligated to comply with SORA's reporting requirements. (Statement of Defendants Pursuant to Rule 56.1 dated June 21, 2013, ¶ 14). On August 18, 1998, he pled guilty in New York County Criminal Court to charges of possessing burglar's tools in violation of New York Penal Law § 140.35 and failing to register as a sex offender in violation of New York Correction Law § 168-t. (1998 Disposition of Conviction, Criminal Docket No. 1998N039356, attached as Exh. C to Declaration of Steven M. Silverberg dated June 21, 2013 ("Silverberg Decl.")). The plaintiff was arrested again and charged with failing to register as a sex offender in 2004 and 2005; both times, however, the charges were dismissed. (Complaint ("Compl."), ¶ II(b)-(d); Declaration of Michel Toliver dated March 23, 2009 ("Toliver Decl."), enclosed with Compl. at 1).

In June 2005, New York State Supreme Court Justice Edward J.

McLaughlin determined that Mr. Toliver was a "Risk Level 3 (High)" sex offender, a designation that requires him to maintain his listing in the sex offender registry for the rest of his life. (Order Providing for Sex Offender Risk Level dated June 20, 2005, attached as Exh. D to Silverberg Decl.; Affidavit of Pamela G. S. Gaitor dated March 20, 2009 ("Gaitor Aff."), attached as Exh. I to Silverberg Decl., ¶ 8).

SOMU maintains a case file with a case history report for every sex offender who is required to maintain a listing in the sex offender registry. (Transcript of Hearing dated Nov. 14, 2013 ("Tr.") at 7-8). Mr. Toliver's case file and case history were accessible to Detective Sanchez throughout Mr. Toliver's investigation, and, at times, Detective Sanchez personally annotated the file. (Tr. at 11, 16-17).

On April 10, 2008, Mr. Toliver signed a written statement acknowledging that he was required to report to the SOMU office on July 14, 2008, in order to re-register pursuant to SORA's requirements. (NYPD Memorandum to Michel Toliver dated April 10, 2008, attached as Exh. E to Silverberg Decl.). The plaintiff, however, did not show up. (SOMU Case History Report, attached as Exh. F to Silverberg Decl., at 3). Detective Sanchez was aware of Mr. Toliver's failure to report on July 14 and therefore knew at

3

that time that the plaintiff was in violation of SORA's reporting requirements.  (Tr. at 12-13).

Following Mr. Toliver's failure to report, SOMU officers took several steps to locate him, including searching police databases and trying to contact him at the address and telephone number that were on file with SOMU.  (Tr. at 13, 16).  Though Detective Sanchez did not personally participate in these efforts, they were all recorded in Mr. Toliver's file, to which he had access.  (Tr. at 16).

On August 12, 2008, a Detective Santiago took a sworn statement from a resident of 545 West 146th Street, the address that Mr. Toliver had most recently reported to SOMU and the New York State Division of Criminal Justice ("DCJS").  The resident attested to the fact that Mr. Toliver had not lived at 545 West 146th Street since May 10, 2008.  (Supporting Deposition of Miguel Angomance dated Aug. 12, 2008 ("Angomance Aff."), attached as Exh. J to Silverberg Decl.).

Additionally, on August 22, 2008, Detective Sanchez and another investigatory officer went to 464 Hudson Street, Apartment 222; an address that a previous database search indicated as being associated with Mr. Toliver.  (Tr. at 12, 14-15).  Detective Sanchez learned from the building manager that 646 Hudson Street is

4

not a residential address and that Apartment 222 is merely a post office box. (Tr. at 15). After confirming that Mr. Toliver did not reside at the Hudson Street address, Detective Santiago requested an I-Card: a local warrant indicating that a subject is either under investigation or is wanted by the NYPD. (Tr. at 16, 25, 27). On February 11, 2009, DCJS sent Mr. Toliver his annual address verification form. (Gaitor Aff., ¶ 9). The form could not be delivered to the address that Mr. Toliver had on file, 545 West 146th Street, and DCJS informed the NYPD on February 24, 2009 that the form had been returned. (Gaitor Aff., ¶¶ 9, 10).

On March 11, 2009, Detective Sanchez located a complaint report that had been filed by Mr. Toliver against SOMU detectives, in which he listed a different address: 894 Riverside Drive, Apartment 4G. (Tr. at 17-19). The next day, Detective Sanchez and his partner went to that address in an attempt to locate the plaintiff. (Tr. at 19). During this visit, the officers spoke with two individuals who resided at the apartment building, both of whom confirmed that Mr. Toliver was currently renting a room there. (Tr. at 19-21). The building manager, Yris Rodriguez, subsequently executed a statement attesting that Mr. Toliver had begun residing at 894 Riverside Drive on June 12, 2008. (Supporting Deposition of Yris Rodriguez dated March 18, 2009, attached as Exh. K to

Silverberg Decl., ¶¶ 3-4).

On March 18, 2009, Detective Sanchez, along with SOMU Detectives Jose Olmo, Patrick Perri, and Patrick Boyan arrived at Mr. Toliver's apartment early in the morning and arrested him on charges of failure to register as a sex offender. (Tr. at 36, 45-47).

Following his arrest, Mr. Toliver was indicted on four counts of failing to register as a sex offender in violation of New York Correction Law § 168-f and convicted on all charges. (Certificate of Disposition, Criminal Docket No. 2009NY022212 ("2009 Disposition"), attached as Exh. L to Silverberg Decl.). Subsequently, Mr. Toliver was sentenced to a combined term of twenty-eight months to seven years in prison, which he is currently serving. (2009 Disposition).

Procedural History

Detectives Sanchez and Olmo now move for summary judgment. Despite being granted two extensions, the plaintiff failed to submit timely opposition papers. (Docket no. 119, 123). A hearing on the motion was held on November 14, 2013, at which Mr. Toliver was present by means of video conference as permitted by Rule 43(a) of the Federal Rules of Civil Procedure. The hearing was designed to clarify the events underlying the defendants' argument that they

had probable cause to arrest Mr. Toliver and to determine whether there were any contested issues of material fact. (Order dated Oct. 31, 2013). Following the hearing, Mr. Toliver filed two submissions contesting the defendants' probable cause argument and opposing their motion for summary judgment. (Letter of Michel Toliver dated Nov. 17, 2013; Letter of Michel Toliver dated Nov. 18, 2013).

Discussion

    A.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002) (alteration in original) (citing former Rule 56(c)); see also Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999) (internal quotation marks omitted). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The opposing party then must come forward with "specific

7

facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Id. at 322.

On a motion for summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Irizarry v. Catsimatidis, 722 F.3d 99, 103 n.2 (2d Cir. 2013). This, however, does not prevent the court from granting summary judgment when the factual assertions are insufficient to support a jury verdict. Anderson, 477 U.S. at 249-50 (citation omitted). The court therefore must inquire into whether the nonmoving party's claims are more than colorable or "significantly probative." Id. (citation omitted).

Thus, in order to survive a motion for summary judgment, the nonmoving party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations and citations omitted); accord Burt Rigid Box,

8

Inc. v. Travelers Property Casualty Corp., 302 F.3d 83, 91 (2d Cir. 2002) ("The nonmoving party 'may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible.'" (quoting Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995))).

Furthermore, a pro se litigant's pleadings should be liberally construed "'to raise the strongest arguments that they suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)). Nevertheless, proceeding pro se does not otherwise "relieve [a litigant] from the usual requirements of summary judgment" and if a pro se party's allegation is not supported by evidence, then the litigant will not overcome a motion for summary judgment. Cayemittes v. City of New York Housing Preservation & Development, __ F. Supp. 2d __, 2013 WL 5434619, at *15 (S.D.N.Y. Sept. 30, 2013); accord Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995); Kadosh v. TRW, Inc., No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("The work product of pro se litigants should be generously and liberally construed, but [the pro se litigant's] failure to allege either specific facts or particular laws that have been violated, renders his attempt to oppose defendants' motion ineffectual.").

Finally, in deciding a motion for summary judgment, the court

may permit oral testimony pursuant to Rule 43(e) of the Federal Rules of Civil Procedure in order to determine whether there are any disputed issues of material fact necessitating a trial. Davis v. Costa-Gavras, 650 F. Supp. 153, 156 (S.D.N.Y. 1986); Argus, Inc. v. Eastman Kodak Co., 612 F. Supp. 904, 908 n.2 (S.D.N.Y. 1985) (collecting cases).

   B.  False Arrest

The plaintiff alleges that he was falsely arrested because the defendants were not acting pursuant to an arrest warrant or with probable cause. A false arrest claim under 42 U.S.C. § 1983 is premised upon the Fourth Amendment right to be free from unreasonable searches and seizures. Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006). The elements of a false arrest claim under § 1983 are "'substantially the same'" as the elements of a false arrest claim brought pursuant to New York law. Hart v. City of New York, No. 11 Civ. 4678, 2013 WL 6139648, at *3 (S.D.N.Y. Nov. 18, 2013) (citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); see also Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). To demonstrate that he was falsely arrested, the plaintiff must show that: (1) he was intentionally confined; (2) he was conscious of his confinement; (3) he did not consent to the confinement; and (4) the confinement was not privileged. Kearney v. Westchester County

Department Of Correction, 506 F. App'x. 45, 45-46 (2d Cir. 2012) (citing Shain v. Ellison, 273 F.3d 56, 67 (2d Cir. 2001)).

It is uncontested that the first three elements have been established.  Mr. Toliver was arrested by Detectives Sanchez and Olmo on March 18, 2009, and he was conscious of and objected to the arrest.  (NYPD Arrest Report, attached as Exh. G to Silverberg Decl.; Compl., ¶ II(b)).  Determination of the instant motion turns on the fourth element.

Probable cause is a complete defense to a claim of false arrest and will, if present, grant the police authority to confine a suspect.  Smith v. Tobon, 529 F. App'x 36, 38 (2d Cir. 2013) (citing Williams v. Town of Greenburgh, 535 F.3d 71, 78-79 (2d Cir. 2008)).  There is probable cause to support an arrest when "the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (quoting Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)); see also O'Brien v. City of Yonkers, No. 07 Civ. 3974, 2013 WL 1234966, at *4 (S.D.N.Y. March 22, 2013).

There is no rigid or formulaic test to determine whether probable cause exists; rather, courts must look to the factual

circumstances immediately prior to and surrounding an arrest. Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006); Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). In doing so they must examine the totality of the facts surrounding an arrest and cannot consider each fact in isolation. Stansbury v. Wertman, 721 F.3d 84, 92-4 (2d Cir. 2013) (finding district court erred in examining only sufficiency of each individual piece of evidence); see also United States v. Delossantos, 536 F.3d 155, 159 (2d Cir. 2008) (The "court must examine the totality of the circumstances of a given arrest."); Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007). Furthermore, the test for probable cause is an objective one. Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); see also Jenkins, 478 F.3d at 88. The subjective intent of the arresting officer is therefore irrelevant to the court's determination. Jaegly, 439 F.3d at 153-54.

Accounting for the fact that it may be impossible for any one officer to possess all knowledge pertinent to a complex and multifaceted police investigation, the collective knowledge doctrine permits officers to rely upon information received from other officials cooperating in the same investigation. Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003) (quoting Illinois

v. Andreas, 463 U.S. 765, 772 n.5 (1983)); United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986). Thus, if an arresting officer does not himself have personal knowledge of probable cause, the arrest may nonetheless be valid if he reasonably relied upon information or a directive from other law enforcement officers involved in the investigation who did have probable cause. United States v. Colon, 250 F.3d 130, 135-36 (2d Cir. 2001). In order for an officer to have reasonably relied upon information or a directive, there must have been a communication between the arresting officer and the other law enforcement officers involved.  See United States v. Cruz, 834 F.2d 47, 51 (2d Cir. 1987) (probable cause determination can be based on collective knowledge where enforcement agents in the investigation were in communication with each other); United States v. Tussa, 816 F.2d 58 (2d Cir. 1987); Wong v. Foo, 649 F. Supp. 2d 34, 60 n.11 (E.D.N.Y. 2008) (noting that "some amount of communication between officers is necessary" for collective knowledge doctrine to apply) (emphasis in original); Pichardo v. New York Police Department, No. 98 Civ. 429, 1998 WL 812049, at *6 (S.D.N.Y. Nov. 18, 1998).

Taking into consideration the totality of the circumstances, Detectives Sanchez and Olmo had probable cause to arrest Mr. Toliver.  As a result of their personal and active involvement in

13

the investigation of the plaintiff, both detectives were aware of information sufficient to warrant a person of reasonable caution to believe that Mr. Toliver failed to register as a sex offender.

Detective Sanchez was aware of the developments noted in Mr. Toliver's case file and, at times, personally annotated the file. (Tr. at 11, 16-17).  He also knew that Mr. Toliver failed to appear on July 14, 2008 for his re-registration meeting.  (Tr. at 12-13). Detective Sanchez went to one of Mr. Toliver's previously listed addresses, 464 Hudson Street, where he learned from the building manager that the property is not a residential address.  (Tr. at 12, 14-15).  Detectives Sanchez and Olmo also visited 894 Riverside Drive, where they spoke with two residents and discovered that Mr. Toliver currently resided in that building.  (Tr. at 17-21).  Yet, Detective Sanchez knew that Mr. Toliver had never advised SOMU that 894 Riverside Drive was his address, as required by SORA. Accordingly, at this point, he knew that Mr. Toliver had violated his reporting requirements.  (Tr. at 19).  Therefore, Detective Sanchez had information sufficient to warrant a person of reasonable caution to believe that Mr. Toliver violated SORA, thus establishing probable cause.

Furthermore, in addition to the knowledge acquired as a result of his own personal involvement, Detective Sanchez also possessed

information regarding other facets of SOMU's investigation that would warrant a finding of probable cause under the collective knowledge doctrine. He was aware of other officers' unsuccessful efforts to locate Mr. Toliver, including running database searches, visiting his previous address, obtaining a declaration from a resident at 545 West 146th street stating that Mr. Toliver did not reside there, requesting an I-Card, and sending an address verification form that was returned as undeliverable. (Tr. at 13, 16; Angomance Aff.; Gaitor Aff., ¶ 9). Detective Sanchez's knowledge that other SOMU officers tried (and failed) multiple times to locate Mr. Toliver constituted reasonably trustworthy information that the plaintiff was not in compliance with SORA, which was sufficient to justify his arrest. And, since Detective Olmo effected the arrest together with Detective Sanchez, the collective knowledge obtained during the investigation may be imputed to him as well.

Accordingly, since the defendants have established that they had probable cause to arrest Mr. Toliver, the defendants' motion for summary judgement should be granted.[2]

---

[2] The defendants argue that the plaintiff's claims should be dismissed because they are entitled to qualified immunity. Since I am recommending that the defendants' motion for summary judgment be granted on the basis of probable cause, I need not discuss the merits of the defendants' qualified immunity argument.

C. State Law Claims

To the extent that the plaintiff has asserted any claims under New York state law, those claims shall be dismissed in light of the recommended dismissal of all federal claims. See Jenkins v. St. Luke's-Roosevelt Hospital Center, No. 09 Civ. 12, 2009 WL 3682458, at *11 (S.D.N.Y. Oct. 29, 2009) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.")); see also 28 U.S.C. § 1367(a), (c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Conclusion

For the reasons above, I recommend that the defendants' motion for summary judgment be granted. Pursuant to 28 U.S.C § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, Room 1350, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

16

Respectfully submitted,

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          December 13, 2013

Copies mailed this date to:

Michel Toliver
10-A-4565
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

Steven M. Silverberg, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007